1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LOUIS F. CONANT, III

               Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

               Defendant.

CASE NO.    C07-5645RBL

REPORT AND
RECOMMENDATION

Noted for May 30, 2008

17

18

19

20

21

     This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. §
636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W.
v. Weber, 423 U.S. 261 (1976).  This matter has been briefed, and after reviewing the record, the
undersigned recommends that the Court affirm the Administration's final decision for further
consideration.

22

### FACTUAL AND PROCEDURAL  BACKGROUND

23

24

25

26

     Plaintiff, Louis Conant, was born in 1946.  He completed four years of college, earning a degree
in advertising and design (Tr. 746331, 544).  Plaintiff has past work experience as a salesperson (stocks,
commodities, office equipment, and retail) (Tr. 326, 762). He last worked in December 1998 (Tr. 334,
587).

27

28

     Plaintiff  filed applications for Title II ("DIB") disability and supplemental security income
("SSI") disability benefits on August 7, 1998 (Tr. 270, 547).  He alleged disability since September 9,

REPORT AND RECOMMENDATION
Page - 1

1 | 1998 (Tr. 239), due to post-traumatic stress disorder (PTSD), major depression, severe anxiety, joint pain,

2 | headaches, and anger (Tr. 325).  Given Mr. Conant's work history, his date last insured ("DLI") for Title

3 | II Social Security disability benefits was December 31, 1998  (Tr. 624).  On January 14, 1999, Social

4 | Security denied these applications (Tr. 252, 550).

5 | On December 21, 1999, Mr. Conant filed another application for Title II disability benefits,

6 | alleging an onset date of November 26, 1996 (Tr 277).  This application was denied initially and upon

7 | reconsideration (Tr. 256, 263).  Mr. Conant timely filed a Request for Hearing (Tr. 267).

8 | Mr. Conant's first ALJ hearing was conducted by ALJ Battiste on July 24, 2001 (Tr 24-52).  ALJ

9 | Battise rendered his unfavorable decision on August 13, 2001 (Tr 120-130).  Mr. Conant timely filed a

10 | Request for Review of the unfavorable ALJ decision with the Appeals Council (Tr. 142-145).  On March

11 | 6, 2002, the Appeals Council issued its Notice of Order, remanding the case to an ALJ for further

12 | proceedings (Tr. 146-149).

13 | Pursuant to this Order, ALJ Schellentrager conducted Mr. Conant's second hearing on July 15,

14 | 2002 (Tr. 53-119).  Witnesses included Mr. Conant and a vocational expert called at the request of the

15 | ALJ  (Tr. 53).  ALJ Schellentrager rendered her unfavorable decision on December 4, 2002 (Tr. 13-23).

16 | Mr. Conant timely filed a Request for Review of this decision with the Appeals Council (Tr.

17 | 11-12).  The Appeals Council made part of the record additional medical evidence submitted in support of

18 | the Request for Review (Tr 10).  On March 17, 2003, the Appeals Council issued its Action of Appeals

19 | Council on Request for Review, denying the appeal (Tr. 8-10).

20 | Mr. Conant timely filed a Complaint for Judicial Review, and on October 9, 2003, based on a

21 | stipulation presented by the parties, the Honorable Robert J. Bryan issued an order, reversing and

22 | remanding the matter for further proceedings  (Tr. 599-601).  Pursuant to the Court's Order of Remand,

23 | the Appeals Council issued an order remanding the case to an ALJ on June 16, 2004 (Tr 602-05).

24 | Mr. Conant's third ALJ hearing was conducted by ALJ Battise on June 23, 2005 (Tr. 738-772).

25 | Witnesses included Mr. Conant and a vocational expert called at the request of the ALJ (Tr. 738).  ALJ

26 | Battise issued the third unfavorable ALJ decision on October 27, 2005 (Tr 581-598).

27 | Plaintiff filed a Statement of Exceptions with the Appeals Council on November 4, 2005 (Tr.

28 | 577-580).  Mr. Conant submitted additional argument in support of the claim on February 13, 2006 (Tr.

1    572-74). On October 11, 2007, the Appeals Council issued its notice, finding no reason to assume

2    jurisdiction of the unfavorable ALJ decision rendered on October 26, 2005 (Tr. 566-570).  ALJ Battiste's

3    October 27, 2005 decision is the administration's final decision and the subject of review before the court

4    at this time.

5          Plaintiff brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as

6    amended, 42 U.S.C. § 405(g), to obtain judicial review of the defendant's final decision denying plaintiff's

7    application for disability insurance benefits.  Plaintiff  filed additional SSI applications on August 26,

8    2003 (Tr. 628-630), and January 8, 2004 (Tr. 606). These applications were granted as Plaintiff was

9    determined disabled as of August 1, 2003 (Tr. 585). Accordingly, Plaintiff's current appeal only concerns

10   his Title II DIB applications and ALJ Batiste's most recent decision denying DIB benefits.  Plaintiff

11   specifically argues ALJ Batiste erred in the following manner: (1) the ALJ failed to properly assess

12   Plaintiff's credibility and the ALJ's residual functional capacity finding is not supported by substantial

13   evidence; and (2) the ALJ failed to sustain his burden at step-five of the sequential evaluation process,

14   i.e., the ALJ failed to show that plaintiff could perform other work in the national economy.

15                                  **DISCUSSION**

16         This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the

17   proper legal standard and there is substantial evidence in the record as a whole to support the decision.

18   Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence

19   as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S.

20   389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less

21   than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

22   Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational

23   interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th

24   Cir. 1984).

25   *A.      THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY*

26         The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's

27   interests are considered.  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  Bunnell v. Sullivan, 947

28   F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority on evaluating plaintiff's

REPORT AND RECOMMENDATION
Page - 3

1   subjective complaints of pain.   Bunnell requires the ALJ findings to be properly supported by the record,

2   and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the

3   claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony

4   regarding pain.'"  Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir.

5   1991)).  Similarly, the ALJ can reject the testimony of lay witnesses only if s/he gives reasons germane to

6   each witness whose testimony s/he rejects.  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill

7   v. Shalala, 12 F.3d  915, 919 (9th Cir. 1993).

8        An ALJ may reject a claimant's subjective pain complaints, if the claimant is able to perform

9   household chores and other activities that involve many of the same physical tasks as a particular type of

10  job.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in Fair v. Bowen,

11  *supra*, and Smolen v. Chater, *supra*, the Social Security Act does not require that claimants be utterly

12  incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a

13  work environment where it might be impossible to rest periodically.

14       Here, the ALJ Batiste found, "[T]he claimant's allegations regarding his limitations during the

15  relevant period are not totally credible for the reasons set forth in the body of the decision"  (Tr. 597).

16  The relevant period at issue in this case is from September 9, 1998 (Plaintiff's alleged onset date) through

17  December 31, 1998 (Plaintiff's DLI).  In his decision the ALJ explained, in length and in detail, his

18  reasoning.  He wrote:

19       The overall medical evidence of record does not support the claimant's symptoms or
         allegations of significant mental problems during the relevant period (Social Security
20       Rulings 96-3p and 96-4p).  His subjective complaints and allegations regarding his
         capability to perform activities of daily living and work-related activities (Exhibit 1E, 5E,
21       7E, and 8E) are out of proportion to any physical findings and without clinical or
         laboratory findings.  Despite his reports of relatively serious problems, treating and
22       examining physicians found no or only mild objective findings and observed no major
         difficulties with functioning during the examinations (Exhibits 2F and 7F).  He has been
23       prescribed and has taken appropriate medications for his mental impairments but the
         medial records reveal that the medications were effective in controlling his symptoms.  In
24       fact, the claimant admitted that ounce he began taking Wellbutrin in September 1998, he
         was "doing better" and had increased energy and more interest (Exhibit 7F, pp. 37 and 40-
25       41).  In November 1998 he told Dr. Weyer that taking Wellbutrin had "greatly helped" his
         depression (Exhibit 7F, pp. 33-36).  On December 28, 1998, the claimant told Dr. Collo
26       that his depression was better and his anger was more controlled on the medication
         (Exhibit 7F, p. 32).

27
         The claimant's activities of daily living and social functioning during the relevant period
28       were not limited to the extent one would expect given his complaints of disabling
         symptoms and limitations.  He was independent in his activities of daily living including

REPORT AND RECOMMENDATION
Page - 4

hygiene, dressing, cooking, cleaning, washing dishes, doing the laundry, and managing finances and he enjoyed gardening and working around the yard, watching television, basketball, drawing, and working on his computer (Exhibits 2F, 7F, pp. 40-45, 1E, and 8E).  As mentioned earlier, he also worked full time from October 1998 through December 1998 (Exhibits 13E and 22E, pp. 1-2).  Although this work activity did not constitute disqualifying substantial gainful activity, it does indicate that his daily activities during the relevant period were greater than he has generally reported in connection with this appeal.  From February 200 through September 2003 the claimant has alleged worsening functioning (Exhibit 16E through 25E), but all of these forms refer to his level of functioning well after the relevant period.  Based on the evidence from the relevant period, it is apparent that the claimant was able to engage in a normal level of daily activity and activities that require concentration.

The record includes evidence strongly suggesting that the claimant exaggerated his symptoms and limitations during the relevant period.  Dr. Weyer opined that, "although the MMPI-2 and the MCMI-2 revealed valid profiles, the patient responded in such a manner to suggest an exaggeration of his symptoms.  On both measures, the veteran endorsed numerous symptoms characteristic of a broad range of mental disorders, suggesting an exaggerated response style.  His response style is suggestive of individuals who are attempting to present themselves in an unfavorable light."  He further opined that, "this response style is sometimes suggestive of individuals who are attempting to gain further psychological assistance or some form of secondary gain" (Exhibit 7F, p.35).  I also note that the claimant's complaints suddenly became significantly worse when he was seen for the consultative evaluation 9Exhibit 2F).  He stated, "I don't want to do anything," and said that he was unable to motivate himself 3 to 4 days per week leaving him unable to get out of bed or he would sit staring most of the day (Exhibit 2F, p. 1).  However, in the very same evaluation he stated he was working full-time, up to 49 hours a week.  Dr. Moran also opined that he was "possibly exaggerating his level of impaired functioning" (Exhibit 2F, p.4).  Although this inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless inconsistencies suggest that the information he has provided may not be entirely reliable, a fact that undermines his overall credibility (*Burton v. Massanari,* 268 F.3d 824 (9th Cir. 2001)).

There are other factors which undermine the claimant's credibility.  The record reflects significant gaps in his work history since 1991, which is years before his alleged onset date (Exhibit 10D).  This raises some questions as to whether his unemployment during the relevant period was truly the result of impairments.  After leaving his job in December 1997, the claimant received unemployment benefits, took a computer course, and continued to look for work (Exhibit 7F, p. 53).  The courts have found that a claimant may admit an ability to work by applying for and/or receiving unemployment compensation benefits because he must hold himself out as being available, willing, and able to work (*Johnson v. Chater*, 108 F.3d 178 (8th Cir. 1997).  It was not until he went on unsuccessful job interviews and lost his unemployment benefits that he again sought medical treatment (Exhibit 7F, p. 52).  He did not pursue the medical treatment one would expect for a totally disabled individual.  He also admitted that his conditions improved when he returned to work in October 1998 (Exhibit 2F, p.2).  He stated that, "every day I'm getting stronger because I'm doing physical work.  The depression is getting better with medication.  I feel a lot better than I did before" (Exhibit 2F, p.2).  Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing.  His responses were evasive or vague at times and did not focus on the relevant period.  He was hostile and glaring throughout the hearing.  It is emphasized that these observations are only some among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and his residual functional capacity.

There is also some concern of alcohol abuse.  On September 14, 1998, Dr. Yoder assessed

1  alcohol dependence (Exhibit 7F, pp. 42-45).  On September 22, 1998, the claimant
admitted to using alcohol and recently receiving a DUI and Dr. Collo recommended
2  education on and the effect of alcohol use on his mental symptoms (Exhibit 7F, pp. 40-41).
He actually admitted to having been arrested for DUI three times with the most recent
3  arrest occurring in December 1997 (Exhibit 7F, pp. 33-36).  When examined by Dr. Moran
(Exhibit 2F), he denied having a problem with alcohol despite the fact he was drinking
4  alcohol every night, had been diagnosed with alcohol abuse, and had been arrested three
times for DUI.  I find that the claimant's psychological picture and overall credibility
5  during the relevant period was clouded by this alcohol abuse and the fact that he had a
consistent pattern of behavior of denying substance abuse despite the evidence to the
6  contrary.  For all the reasons stated above, I find the claimant not entirely credible and that
the symptoms he descries are not severe enough to preclude all employment during the
7  relevant period (Social Security Rulings 96-3p and 96-7p).

8  (Tr. 591-593).

9  Upon review of the record, this court finds the ALJ properly discredited Plaintiff's testimony and

10  allegations of disability.  For instance, the ALJ noted two specific medical reports during the period in

11  question that demonstrated Plaintiff was less limited than alleged and were inconsistent with the degree of

12  limitation Plaintiff claimed (Tr. 592 citing exhibits 2F (Tr. 375-382) and 7F (Tr. 438-461)).  The ALJ

13  correctly did not address the medical evidence that was not directly related to the relevant period.

14  The Veteran's Administration treatment records cited by the ALJ indicated Plaintiff was not as

15  limited as he claimed (Tr. 588-589, 592, 593-594). On August 20, 1998, Plaintiff reported a history of

16  depression and three failed job interviews (Tr. 459). On September 9, 1998, Ronald Nazareth, M.D.,

17  examined Plaintiff and diagnosed dysthymia[4] and chronic, mild, PTSD (Tr. 451-452 duplicated at 453 &

18  458). On September 22, 1998, Luis Collo, Jr., M.D., examined Plaintiff and diagnosed major depressive

19  disorder that was recurrent and improving, as well as PTSD that needed to be ruled out (Tr. 446-447). He

20  prescribed continued Welbutrin, testing, and counseling (Tr. 447). On October 9, 1998, Dr. Collo reported

21  that Plaintiff's depression was better with increased energy; he had adequate, coherent, and relevant

22  speech; there was no gross thought disorder; and he had an appropriate affect (Tr. 443). On November 3,

23  1998, Matthew Weyer, Ph.D., examined Plaintiff and concluded that Plaintiff had a dysthmic disorder and

24  a personality disorder (Tr. 441). He noted that Plaintiff had exaggerated his symptoms on two diagnostic

25  instruments, which was "suggestive of individuals who are attempting to present themselves in an

26  unfavorable light" (Tr. 441). Finally, on December 29, 1998, just prior to the end of the relevant period,

27  Dr. Collo again noted Plaintiff's depression was better and his anger was more controlled. The ALJ

28  appropriately noted that this medical treatment record during the relevant period supported some degree

REPORT AND RECOMMENDATION
Page - 6

1   of work related limitation, but not the degree alleged by Plaintiff.

2       In sum, the undersigned finds the ALJ properly reviewed the medical evidence in the context of

3   Plaintiff's credibility and residual functional capacity.  The ALJ provided very specific and legitimate

4   reasons for discrediting Plaintiff's credibility.  Moreover, the ALJ's decision is supported by substantial

5   evidence.  Accordingly, the Court should find that the ALJ gave proper reasons for discounting Plaintiff's

6   testimony.

7   **B.    *SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT MR. NELSON IS ABLE TO PERFORM CERTAIN TYPES OF LIGHT WORK***

8       Plaintiff argues the ALJ failed to meet his burden at step-five, requiring him to showing Plaintiff

9
    was capable of performing certain types of work within the national economy.  At step-five of the

10  administrative process the burden of proof shifts to the Commissioner to produce evidence of other jobs

11  existing in significant numbers in the national economy that Plaintiff could perform in light of his age,

12  education, work experience, and residual functional capacity.  *See* Tackett v. Apfel,180 F.3d 1094,1099

13  (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184 (9th Civ. 1995).  In Tackett, the court noted "there

14  are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant

15  numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert,

16  or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." Id.

17
        Here, the ALJ utilized the services of a vocational expert, who testified that a person with

18  Plaintiff's residual functional capacity and limitations would be able to perform work as a

19  janitor/industrial cleaner and a patch worker (Tr. 596).  Plaintiff's argument that the ALJ erred is

20  premised on the assertion that the ALJ failed to properly assess Plaintiff's testimony and the medical

21  evidence.  As discussed above, the undersigned finds no error in the ALJ's decision regarding Plaintiff's

22  credibility and the ALJ's review of the medical evidence supporting that decision.   Accordingly, the

23  undersigned finds no error in the ALJ's reliance on the vocational expert's testimony.  The hypothetical

24  relied on by the vocational expert accurately reflected the ALJ's assessment of Plaintiff's residual

25  functional capacity and limitations during the relevant period.

26                                   **CONCLUSION**

27
        Based on the foregoing discussion, the Court should affirm the Administration's final decision
28
    denying plaintiff's application for social security disability benefits.  Pursuant to 28 U.S.C. § 636(b)(1)

REPORT AND RECOMMENDATION
Page - 7

1   and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service

2   of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a

3   waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating

4   the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 16,**

5   **2008**, as noted in the caption.

6          DATED this 7th day of May, 2008.

7

8                                        */s/ J. Kelley Arnold*
                                       J. Kelley Arnold
                                       U.S. Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 8